[No. H031130. Sixth Dist. June 10, 2008.]

MORDECAI TENDLER, Plaintiff and Appellant, v.
WWW.JEWISHSURVIVORS.BLOGSPOT.COM et al., Defendants and
Respondents.

**COUNSEL**

Mordecai Tendler, in pro. per., for Plaintiff and Appellant.

Cindy A. Cohn; Public Citizen Litigation Group and Paul Alan Levy for Defendants and Respondents.

OPINION

**MIHARA, Acting P. J.**—Appellant Mordecai Tendler obtained a prefiling discovery order in Ohio to aid in his effort to learn the identities of the anonymous individuals who had posted statements about him on the Internet that he believed were defamatory. Respondents, whom we will refer to as the Does, are the anonymous individuals who posted those statements. When Google, the subject of Tendler's discovery order, refused to comply with Ohio subpoenas, Tendler filed a request for subpoenas in Santa Clara County Superior Court premised on the Ohio discovery order. The Does filed a motion to quash and a Code of Civil Procedure section[1] 425.16 motion to strike. Although Tendler withdrew his request for subpoenas, the Does proceeded on their section 425.16 motion to strike. The superior court granted the Does' section 425.16 motion to strike, and awarded them their attorney's fees. On appeal, we conclude that a request for subpoenas does not fall within section 425.16, and therefore the superior court erred in granting the motion and in awarding attorney's fees.

## I. Background

In February 2006, Tendler, a resident of New York, obtained an order from an Ohio state court providing his Ohio attorney with "subpoena power for the purpose of obtaining IP address and other owner/creator information from Google concerning web blogs that have allegedly published false, libelous and defamatory statements concerning the Petitioner."[2] In March 2006, Tendler's Ohio attorney issued a subpoena to Google seeking "the originating internet protocol (IP) address(es) or other owner/creator information for the following uniform resource locator (URL): www.jewishwhistleblower.blogspot.com." At the same time, identical subpoenas were issued to Google for the URL's www.rabbinicintegrity.blogspot.com, www.newhempsteadnews.blogspot.com, and www.jewishsurvivors.blogspot.com. Google apparently declined to respond to these Ohio subpoenas.

On May 24, 2006, Tendler's California attorney filed a "request[]" in Santa Clara County Superior Court asking the court "to issue a case number and endorse" the four subpoenas. The court filed a "civil case cover sheet" on May 24, 2006, and assigned a case number. (Capitalization omitted.)

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Tendler's action in Ohio state court was dismissed without prejudice "as the result of an administrative oversight" on April 25, 2006. The dismissal order was vacated nunc pro tunc on June 19, 2006.

Google apparently notified the Does of Tendler's subpoenas. On July 7, 2006, "defendants John Doe JewishSurvivors[,] Jewish Whistleblower, and NewHempsteadNews" filed a motion to quash the subpoenas.[3] On July 13, 2006, the Does filed a second motion seeking to "strike this proceeding" under section 425.16. They claimed that "the allegations of the deposition subpoena and the underlying petition are covered by C.C.P. § 425.16 . . . ." (Capitalization omitted.) On August 2, 2006, Tendler filed a request for dismissal without prejudice of the "Out-of-State Subpoena Commission." The dismissal was entered that day.

On August 29, 2006, Paul Alan Levy filed an application for permission to appear as counsel *pro hac vice* for the Does. Levy wished to appear in association with the California attorney, Cindy Cohn, who was also representing the Does. A hearing was set for October 12, 2006, on the motion to strike and on the application to appear *pro hac vice*. Tendler's Ohio and California attorneys apparently ceased to act on Tendler's behalf in August 2006, and Tendler apparently was without counsel thereafter. However, he did not promptly file a proper substitution of attorneys or provide the Does' attorneys with a mailing address or telephone number, which made it difficult for them to serve Tendler with any pleadings.

The motion to strike and application to appear *pro hac vice* were heard on October 12, 2006. Neither Tendler nor any attorney appeared on his behalf. The court granted the application and the motion, and awarded the Does "their attorney fees and costs pursuant to Code of Civil Procedure § 425.16(c)." On October 18, 2006, Tendler filed a proper substitution of attorney, substituting himself for his California attorney and providing a mailing address and telephone number for himself.

On November 7, 2006, the Does filed a motion for an award of attorney's fees and costs. They sought $40,496.25 in attorney's fees and $1,745.64 in costs. Levy asserted that he had spent 34.5 hours on the litigation, while the associated California attorneys had spent a total of 29.2 hours. Levy's time had been spent between June 13, 2006, and October 28, 2006, with most of the time being spent early on. Tendler sent a letter to the court that seemed to seek reconsideration of the court's prior orders, but the court denied the request for reconsideration as untimely.

The court awarded the Does $20,330 in attorney's fees and their costs. Tendler filed a timely notice of appeal from the court's orders granting the motion to strike and awarding the Does their costs and attorney's fees.

---

[3] The fourth defendant, www.rabbinicintegrity.blogspot.com, did not join in the motion to quash or in the motion to strike.

## II. Analysis

The question before us in this case is whether a request for a subpoena falls within the scope of section 425.16.

■ " 'We begin as always "with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent." [Citation.] To discover that intent we first look to the words of the statute, giving them their usual and ordinary meaning. [Citations.] "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." [Citation.]' (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].)" (*Sheppard v. Lightpost Museum Fund* (2006) 146 Cal.App.4th 315, 322 [52 Cal.Rptr.3d 821] (*Sheppard*).)

■ Section 425.16 provides that "[a] *cause of action* against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1), italics added.) This "cause of action" must be contained in a complaint, cross-complaint, petition or similar pleading initiating a judicial proceeding. (§ 425.16, subd. (h); *Sheppard, supra*, 146 Cal.App.4th at pp. 322–323.) "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." (§ 425.16, subd. (c).) ■ The Legislature has mandated that section 425.16 "shall be construed broadly." (§ 425.16, subd. (a).)

■ Even the broadest interpretation of the plain language of section 425.16 cannot stretch it to cover a request for a subpoena. A request for a subpoena is not a complaint, a cross-complaint, a petition or any equivalent pleading, does not contain any causes of action, and does not serve to initiate a judicial proceeding.

■ A complaint or cross-complaint must contain a statement of the factual allegations constituting the cause of action and a demand for the relief sought by the pleader. (§ 425.10.) "The *pleadings* are the formal allegations by the parties of their respective claims and defenses, for the judgment of the Court." (§ 420, italics added.) As a request for a subpoena does not contain causes of action, does not seek relief, and does not serve to formally allege a party's claims and seek judgment, it bears no resemblance whatsoever to the pleadings at which section 425.16 is directed.

■ Section 425.16 is also explicitly directed at the striking of "a cause of action." Yet a request for a subpoena, unlike a complaint, cross-complaint, or petition, does not contain *any* "cause of action." An "action" is a proceeding "one party [prosecutes] against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." (§ 30.) A request for a subpoena does not seek to prosecute "another for the declaration, enforcement or protection of a right" and does not seek "redress or prevention of a wrong." A request for a subpoena merely seeks to compel the disclosure of information potentially relevant to a "cause of action." Indeed, a request for a subpoena directed at a third party, such as the request filed by Tendler, is not even served on the adverse party and could not possibly be expected to initiate a "cause of action" against that adverse party.

■ The Does argue that Tendler, recognizing that California does not permit prelitigation discovery, filed "a new action" for defamation in California. The record provides no support for this contention. Tendler never filed a complaint, petition, or other similar pleading that would be sufficient to initiate a lawsuit in California. His sole filing in California was a "civil case cover sheet" that was accompanied by an affidavit of his attorney and a "request" that the court "issue a case number and endorse" the four subpoenas. A civil case cover sheet does not on its own initiate a lawsuit, nor does an affidavit and request for endorsement of subpoenas. The absence of a complaint, petition, or other similar pleading establishes that Tendler did not file a California lawsuit.

The Does claim to find support for their contentions in this court's recent decision in *Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154 [72 Cal.Rptr.3d 231] (*Krinsky*), but *Krinsky* is not helpful to their cause. Lisa Krinsky filed a defamation lawsuit in Florida against Doe 6, and subsequently served a subpoena on Yahoo! in Santa Clara County seeking to discover Doe 6's identity. Doe 6 moved to quash the subpoena, but the motion to quash was denied. (*Krinsky*, at pp. 1159–1161.) On appeal from the denial of the motion to quash, this court held that Krinsky was not entitled to prevail on the motion to quash unless she made a prima facie showing in support of at least one of her Florida causes of action against Doe 6. (*Krinsky*, at pp. 1171–1172.)

The Does claim that *Krinsky* establishes that a request for a subpoena must contain causes of action in order to justify the subpoena's issuance. They misunderstand *Krinsky*. *Krinsky* does not require that the prima facie showing be made in the request for a subpoena. Instead, *Krinsky* sets forth the standard that is applicable in deciding a motion to quash. Here, under

*Krinsky*, Tendler would have been required to make a prima facie showing in support of at least one of his Ohio causes of action against the Does in order to overcome the Does' motion to quash. However, the Does' motion to quash was never heard because Tendler dismissed his request for subpoenas in response to the filing of the Does' motion.

The fact that Tendler would have been required to make a prima facie showing to prevail on the motion to quash does not mean that his request for subpoenas was a complaint-like pleading stating causes of action. *Krinsky*'s prima facie showing requirement does not apply to the request for a subpoena itself, but only to the showing necessary to overcome a motion to quash. Nothing in *Krinsky* supports the Does' claim that a request for a subpoena must contain causes of action.

■ The Does express great concern that, absent the availability of a section 425.16 motion to strike, their First Amendment rights may be at risk. Such concerns are not properly addressed to this court. We lack the "power to rewrite the statute so as to make it conform to a presumed intention which is not expressed. This court is limited to interpreting the statute, and such interpretation must be based on the language used." (*Seaboard Acceptance Corp. v. Shay* (1931) 214 Cal. 361, 365 [5 P.2d 882].) "In interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, ' " 'whatever may be thought of the wisdom, expediency, or policy of the act.' " ' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

The Does' concern may also be overstated. It is debatable whether the unavailability of a section 425.16 special motion to strike deprives an anonymous speaker whose identity is sought by a subpoena of adequate means to protect his or her First Amendment rights. In this case, for instance, the Does brought a motion to quash the subpoenas, a valid means for challenging the validity of Tendler's discovery request. (See *Krinsky, supra,* 159 Cal.App.4th 1154; *Matrixx Initiatives, Inc. v. Doe* (2006) 138 Cal.App.4th 872, 879–881 [42 Cal.Rptr.3d 79].)

■ The Does cannot establish that section 425.16 applies to a request for a subpoena. Consequently, we can only conclude that the superior court erred in granting the Does' section 425.16 motion to strike and awarding attorney's fees.

### III.   Disposition

The superior court's orders are reversed, and the matter is remanded with directions to deny the section 425.16 motion. In the interests of justice, the parties shall bear their own costs on appeal.

Duffy, J., concurred.

**McADAMS, J.,** Concurring.—Attention anonymous Internet posters and bloggers: this court has good news and bad news for those of you who engage in nontortious discourse. The good news, announced earlier this year: your message will be protected by the First Amendment and your identity will be protected by the court quashing a third party subpoena, unless the requesting party can make a prima facie showing of defamation. (*Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154 [72 Cal.Rptr.3d 231] (*Krinsky*).) The bad news: it may cost you tens of thousands of dollars to preserve your anonymity.

I must concur with my colleagues' ultimate conclusion that Code of Civil Procedure section 425.16 (section 425.16) does not apply to requests for subpoenas, but I write separately for two reasons: First, I cannot agree with the rationale employed by the majority in reaching the conclusion that the statute is inapplicable here. Second, I urge the Legislature to consider whether the statute should be expanded to include third party subpoena requests of this type.

1.  *Section 425.16 does not apply because no cause of action is stated.*

Although my colleagues have no difficulty rejecting the application of section 425.16 to a request for a third party subpoena, I do not reach this conclusion quite so easily and comfortably.

In enacting this provision, the Legislature expressed specific concern that "participation in matters of public significance . . . should not be chilled through abuse of the judicial process" and it noted "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., § 425.16, subd. (a).)

In *Krinsky*, this court recognized the exercise of constitutional rights implicated in anonymous Internet message board postings, saying "ordinary

people with access to the Internet can express their views to a wide audience through the forum of the online message board. The poster's message not only is transmitted instantly to other subscribers to the message board, but potentially is passed on to an expanding network of recipients, as readers may copy, forward, or print those messages to distribute to others. The use of a pseudonymous screen name offers a safe outlet for the user to experiment with novel ideas, express unorthodox political views, or criticize corporate or individual behavior without fear of intimidation or reprisal. In addition, by concealing speakers' identities, the online forum allows individuals of any economic, political, or social status to be heard without suppression or other intervention by the media or more powerful figures in the field." (*Krinsky, supra*, 159 Cal.App.4th at p. 1162.)

Here, appellant Mordecai Tendler, a rabbi, sought the identity of his online critics on four Web blogs or "blogs" related to matters of interest to members of the Orthodox Jewish community. This New York resident brought an action in Ohio claiming false and defamatory statements made against him and served subpoenas in California on Google, Inc., the Internet Service Provider (ISP) hosting the blogs, seeking the Internet protocol addresses of the respondents and thus their personal identities. Respondents' motion to quash service of the subpoenas and their motion to dismiss under section 425.16 raised First Amendment objections and contained declarations concerning the potential consequences within the Orthodox Jewish community if disclosure occurred, including religious, economic and social ostracism.

Accordingly, from the trial court's perspective, the issues before the court in California raised the question whether appellant's request involved an "abuse of the judicial process" within the meaning of section 425.16.

It is understandable how the trial court reached the conclusion that the statute applied, given the lack of effective opposition on the part of appellant, coupled with the legislative mandate that section 425.16 be "construed broadly" to carry out its purpose. (Code Civ. Proc., § 425.16, subd. (a); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 60 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

However, I reluctantly agree with the majority that even the broadest construction cannot bring this particular proceeding within the statute's ambit. My colleagues easily dispose of the matter by finding that the statute applies only to complaints, petitions, or their equivalent. (See Code Civ. Proc., § 425.16, subd. (h).) In my view, by contrast, the pivotal point is that this proceeding presents no *cause of action* to be stricken. (*Id.*, subd. (b)(1).)

As Witkin explains, "the meaning of 'cause of action' remains elusive and subject to frequent dispute and misconception . . . ." (4 Witkin, Cal.

Procedure (4th ed. 1997) Pleading, § 25, p. 87.) Nevertheless, there are well-established precepts that help settle its meaning.

"The essence of a cause of action is the existence of a primary right and one violation of that right, i.e., it arises out of an antecedent primary right and corresponding duty, and a breach of such primary right and duty by the person upon whom the duty rests." (*Hilltop Properties, Inc. v. State* (1965) 233 Cal.App.2d 349, 354 [43 Cal.Rptr. 605]; see also, e.g., *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904 [123 Cal.Rptr.2d 432, 51 P.3d 297]; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 [34 Cal.Rptr.2d 386, 881 P.2d 1083]; *McKee v. Dodd* (1908) 152 Cal. 637, 641 [93 P. 854].) "The primary right and duty and the delict or wrong constitute the cause of action in the legal sense." (*Hilltop Properties, Inc. v. State*, at p. 354.) "Action is not the same as cause of action. While 'action' refers to the judicial remedy to enforce an obligation, 'cause of action' refers to the obligation itself." (*Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 [263 Cal.Rptr. 195].)

In this case, appellant asserts his primary right or obligation in another jurisdiction. His subpoena request seeks only ancillary assistance from our state's courts in order to prosecute his sister state action. (Cf. *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 162 [64 Cal.Rptr.3d 488] [section 425.16 does not apply to prayer for injunction, which "is a remedy, not a cause of action"].)

Under the explicit, operative terms of the statute, the special motion to strike targets a cause of action. (Code Civ. Proc., § 425.16, subd. (b)(1).) Here, there is no "cause of action" on which the special motion to strike can operate. The statute thus does not apply. As a consequence, respondents have no entitlement to statutory fees. (Cf. *id.*, subd. (c).)

2. *The Legislature should give this issue its consideration.*

As this court noted in *Krinsky*, "computer users have encountered a proliferation of chat rooms and Web sites that allow them to share their views on myriad topics from consumer products to international diplomacy." (*Krinsky, supra*, 159 Cal.App.4th at p. 1158.) Given that fact, there is good reason to believe there has been and will continue to be a corresponding increase in requests for subpoenas served on ISP's and other site hosts to disclose the identities of writers. Some requests will be based on a legitimate right to discover the source of libelous statements or business disinformation schemes; but some will be solely for the purpose of silencing a critic by harassment, ostracism, or retaliation.

I urge the Legislature to consider whether section 425.16 as currently written adequately addresses this rapidly expanding arena of public expression and whether the statute leaves this popular forum open to potential "abuse of the judicial process" without the level of protection afforded "causes of action."