[No. G029800. Fourth Dist., Div. Three. Mar. 27, 2003.]

CONSUMER JUSTICE CENTER et al., Plaintiffs and Respondents, v. TRIMEDICA INTERNATIONAL, INC., et al., Defendants and Appellants.

598

COUNSEL

Law Offices of Carlos F. Negrete and Carlos F. Negrete for Defendants and Appellants.

Law Offices of Mark Boling and Mark Boling for Plaintiffs and Respondents.

OPINION

**MOORE, J.**—Do claims that a product offers "The All-Natural Way To A Fuller, More Beautiful Bust!" constitute speech on a matter of "public interest" within the meaning of Code of Civil Procedure section 425.16? We hold that they do not.

Trimedica International, Inc., Joseph Christy, Martha Christy, and General Nutrition Corporation (collectively Trimedica) appeal the trial court's order denying a special motion to strike pursuant to Code of Civil Procedure section 425.16 (all statutory references are to the Code of Civil Procedure unless otherwise noted). Trimedica contends the lawsuit filed by Consumer Justice Center and Melanie Mars (collectively CJC or plaintiffs) constitutes a strategic lawsuit against public participation (SLAPP suit). We affirm the trial court's ruling.

# I

## FACTS

Plaintiffs sued Trimedica for false advertising, consumer fraud and related claims with respect to the product Grobust. Trimedica's literature states that Grobust is a pill that "offers a revolutionary breakthrough that provides a 100% natural alternative to breast implants." According to a "doctor" (see pt. II.D., *post*) endorsing Grobust, "Claims of a breast enlargement of one half inch in 45 days have been substantiated."

CJC's complaint alleged that Trimedica's claims about Grobust were false and misleading, in violation of the Consumers Legal Remedies Act (Civ. Code, § 1770, subd. (a)(5)) and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). Trimedica filed a special motion to strike pursuant to section 425.16 (the anti-SLAPP statute), arguing the CJC complaint constituted a SLAPP suit because the claims arose from acts in furtherance of Trimedica's rights to petition and to engage in free speech under the federal and California Constitutions. CJC countered by arguing the anti-SLAPP statute was not intended to protect allegedly false commercial speech. The trial court denied the motion, stating that Trimedica's commercial speech regarding Grobust did not implicate a public issue within the meaning of the anti-SLAPP statute. Pursuant to section 425.16, subdivision (j), this appeal followed.

# II

## DISCUSSION

### A. *Standard of Review*

We exercise independent judgment to determine whether Trimedica's motion to strike should have been granted. (*Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 721 [77 Cal.Rptr.2d 1].)

### B. *Statutory Context*

The Legislature adopted the anti-SLAPP statute in 1992, finding that "[I]t is in the public interest to encourage continued participation in matters of public significance, and . . . this participation should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).) Therefore, "A cause of action against a person arising from any act of that person in furtherance of

the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The statute is to be "construed broadly." (§ 425.16, subd. (a).)

An " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The statute requires a two-part analysis to determine the propriety of granting or denying a motion to strike. First, we decide whether the causes of action arise from acts in furtherance of the defendant's right of free speech or right of petition. If the defendant has made such a showing, then we determine if the plaintiff has demonstrated a reasonable probability of prevailing. (§ 425.16, subd. (b)(1).) We address each issue in turn.

## C. Acts in Furtherance of Trimedica's Rights of Free Speech and Petition

When the defendant's alleged acts fall under the first two prongs of section 425.16, subdivision (e) (speech or petitioning before a legislative, executive, judicial, or other official proceeding, or statements made in connection with an issue under review or consideration by an official body), the defendant is not required to independently demonstrate that the matter is a "public issue" within the statute's meaning. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113 [81 Cal.Rptr.2d 471, 969 P.2d 564].) If, however, the defendant's alleged acts fall under the third or fourth prongs of subdivision (e), there is an express "issue of public interest" limitation. (*Briggs*, at p. 1117.)

Because Trimedica's alleged acts constitute purely commercial speech and do not involve the rights of speech or petition before any official body, the public interest limitation applies. Therefore, unless Trimedica's

speech concerns a matter of public interest within the meaning of the statute, section 425.16 does not apply.

Trimedica argues that "herbal dietary supplements and other forms of complementary medicine are the subject of public interest." As support, Trimedica cites regulations of herbal supplements by the Federal Trade Commission and the Food and Drug Administration pursuant to acts of Congress. Yet Trimedica's speech is not about herbal supplements in general. It is commercial speech about the specific properties and efficacy of a particular product, Grobust. If we were to accept Trimedica's argument that we should examine the nature of the speech in terms of generalities instead of specifics, then nearly any claim could be sufficiently abstracted to fall within the anti-SLAPP statute.

CJC suggests a hypothetical regarding false statements made in the course of a real property sale. Blackacre sells a house to Whiteacre, and Whiteacre sues, claiming the defendant misrepresented the square footage. Blackacre brings a special motion to strike, claiming his speech involves a matter of public interest, because millions of Americans live in houses and buy and sell houses. CJC correctly suggests that applying the anti-SLAPP statute in such a case would be absurd.

This case is no more about the general topic of herbal supplements than the hypothetical above is about the general topic of buying and selling houses. The lawsuit in the hypothetical is about the specific topic of whether Blackacre misrepresented the house's square footage to Whiteacre. The topic of this lawsuit is whether Trimedica misrepresented the specific properties and benefits of Grobust. Neither is a matter of general public interest within the meaning of the statute.

Although Trimedica cites *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562 [92 Cal.Rptr.2d 755] (hereafter *DuPont*) in support of its argument, this case supports our conclusion that Trimedica's claims about Grobust are not a matter of public interest. In *DuPont*, the consumer plaintiffs alleged the defendant pharmaceutical company artificially inflated the price of its product, Coumadin, by disseminating false information regarding the drug's generic equivalent. The complaint alleged the false statements were made before regulatory bodies, to the medical profession, and to the public. (*Id.* at p. 564.) While the statements made before regulatory bodies fell under the first two prongs of section 425.16, subdivision (e), the statements to the public at large fell under the third and fourth prongs, and were therefore required to relate to a public issue.

(*DuPont,* at pp. 566-567.) The court noted, "We find the answer to this question in the first amended complaint. Plaintiffs allege: 'More than 1.8 million Americans have purchased Coumadin, an anti-coagulant medication, for the prevention and treatment of blood clots that can lead to life-threatening conditions such as stroke and pulmonary embolism.' Both the number of persons allegedly affected and the seriousness of the conditions treated establish the issue as one of public interest." (*Id.* at p. 567.)

Like the *DuPont* court, we look to CJC's complaint, which alleges Trimedica made the following claim, among others, about Grobust: "The All-Natural Way To A Fuller, More Beautiful Bust! When you want a fuller, firmer, more beautiful bustline, don't resort to traumatic, dangerous surgeries. . . . Herbal Grobust™ offers a revolutionary breakthrough that provides a 100% natural alternative to breast implants."

The conclusion that Grobust and Coumadin have little in common should be self-evident. Grobust does not treat life-threatening conditions such as stroke and pulmonary embolism, nor is there evidence it is widely used. Therefore, Grobust does not qualify as a matter of public interest by examining either "the number of persons allegedly affected" or "the seriousness of the conditions treated. . . ." (*DuPont, supra,* 78 Cal.App.4th at p. 567.) *DuPont* is factually inapposite, and its holding should be limited to specific speech relating to true matters of public interest.

The stated intent of the anti-SLAPP statute is "to encourage continued participation in matters of public significance." (§ 425.16, subd. (a).) No logical interpretation of this statement suggests that "matters of public significance" include specific advertising statements about a particular commercial product, absent facts which truly make that product a matter of genuine public interest, as was the case in *DuPont*. If we were to do so, nearly any product could claim its speech was about a topic of public interest. Construing the statute in this manner would allow every defendant in every false advertising case (or nearly any case that involves any type of speech) to bring a special motion to strike under the anti-SLAPP statute, even though it is obvious that the case was not filed for the purpose of chilling participation in matters of public interest. Because an order granting or denying the motion to strike is immediately appealable pursuant to section 425.16, subdivision (j), every such case would be delayed for a period of months or years while the appellate court used its scarce resources to consider any merit it might have. We do not believe the Legislature intended the statute to be construed in such a manner, and decline to do so.

## D. *CJC's Probability of Prevailing*

■ Even if we had decided that Grobust is an issue of public interest within the meaning of the statute, we would nonetheless find that the trial court had correctly denied Trimedica's motion to strike. ■ Under the second prong of section 425.16, subdivision (b)(1), a motion to strike under the anti-SLAPP statute must be denied if the plaintiff establishes a probability of prevailing. To establish the requisite probability of prevailing, the plaintiff must state and substantiate a legally sufficient claim. (*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1123.) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].)

■ In opposition to the motion to strike, CJC submitted a declaration by Kim Elaine Barrett. Barrett holds a Ph.D. in biological chemistry and has postdoctoral training. She is currently employed as a professor of medicine and vice-chair for research, department of medicine, at the University of California, San Diego. She has extensive experience reviewing research regarding human physiology. In addition, she has served on the editorial boards of numerous peer-reviewed medical journals, and published more than 140 papers, chapters, and reviews.

Barrett reviewed the qualifications of Robert W. Bradford and the study he purportedly performed with respect to Grobust, which was included in the Grobust advertisements. She also reviewed the advertisements and claims for Grobust, its listed ingredients, and the medical literature regarding the active ingredients. She noted Grobust's advertisements included claims that the product was a breast enlarger, and that its safety and effectiveness had been scientifically proven. Barrett noted, however, that "claims for ingested substances are accepted by the respectable scientific community only when these claims have been verified by two independent, placebo-controlled, double-blind, well-documented studies, performed by qualified independent experts, with statistically significant differences between test and control groups."

Accordingly, Barrett reviewed the reported results of the Grobust study performed by Bradford. The stated results (including "82% experienced bust growth") did not state the measurement techniques for the parameters assessed, the extent of the changes experienced, or whether the results

achieved statistical significance. Moreover, it was not a double-blind, placebo-controlled, or independent study, nor did the results appear in any peer-reviewed scientific literature. Barrett concluded that the Bradford study was "totally unacceptable as scientific evidence."

Barrett also reviewed Bradford's qualifications. The Grobust literature presents Bradford as a "Doctor of Science and a Professor of the Capital University of Integrative Medicine . . . ." According to Barrett's research, Bradford does not have a doctorate or any scientific training from any accredited institution, nor has he published any peer-reviewed research. Bradford's "doctorate" appears to be an honorary degree from an unaccredited institution. The Capital University of Integrative Medicine is not accredited or recognized by any legitimate scientific organization. Barrett opined that Bradford was not competent to state an expert scientific opinion regarding Grobust.

Barrett reviewed the list of ingredients provided by Trimedica, and researched the peer-reviewed studies and literature regarding each ingredient.[1] She was unable to locate any valid scientific data which would validate the claims made for Grobust. Based on the facts and research, Barrett stated there was no competent evidence to support the claim that Grobust increases breast size.

Barrett further noted that no research had been performed on the long-term effects on humans of the active ingredients of Grobust. Therefore, the ingredients potentially pose long-term health risks. The ingredients might also interact with other drugs and substances in use by the general population. Given these factors, there was no scientific justification for calling Grobust "safe."

Trimedica did not submit any countervailing evidence in the court below. Instead, it challenged the admissibility of the Barrett declaration and asserted that CJC had not met the required burden of proof. We disagree. Trimedica suggested to the trial court that CJC must affirmatively prove that Grobust was a worthless product by presenting scientifically valid studies of its own.

---

[1]According to Barrett's declaration, Trimedica has indicated that Grobust contains the following ingredients: blessed thistle (cnicus benedictus), dandelion root (taraxacum officinale), damiana (turnera aphrodisiaca), dong quai (angelica sinensis), kava kava (piper methysticum), motherwort (leonurus caridaca), sabal (saw palmetto), and wild yam. We note that Barrett's declaration was signed on August 22, 2001, prior to the Food and Drug Administration's consumer advisory regarding kava's potential to cause liver damage. (Food & Drug Admin., Center for Food Safety and Applied Nutrition, *Consumer Advisory: Kava-Containing Dietary Supplements May Be Associated with Severe Liver Injury* (Mar. 25, 2002) <http://www.cfsan.fda.gov/~dms/addskava.html> [as of Mar. 27, 2003].)

If this were the standard, only the rarest of plaintiffs would ever be able to prevail on the second prong of a special motion to strike. ■ To the contrary, the plaintiff's burden to establish a probability of prevailing on its claim must be compatible with the early stage at which the motion is brought, and the parties' limited opportunity to conduct discovery. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823-824 [33 Cal.Rptr.2d 446].) We do not weigh the evidence, but accept as true all evidence favorable to the plaintiff. (*Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 746 [36 Cal.Rptr.2d 687].)

■ Here, the gravamen of CJC's complaint is that Trimedica falsely advertised Grobust as a product that enlarges women's breasts. The Barrett declaration states Trimedica has no reasonable scientific basis for claiming that Grobust is either safe or effective as a breast enlarger. From the Barrett declaration, a reasonable trier of fact could conclude: (1) Grobust advertising created the impression that Grobust was a scientifically proven formula that would increase the size of a woman's breasts; (2) that assertion was misleading because it was not supported by any reliable scientific proof; and (3) at a minimum, Trimedica should have known its advertising created that impression. This is a sufficient prima facie case to withstand a special motion to strike pursuant to section 425.16.

III

DISPOSITION

The court's order denying Trimedica's motion is affirmed. CJC is entitled to its costs on appeal, including attorney fees.

Bedsworth, Acting P. J., and Aronson, J., concurred.

A petition for a rehearing was denied April 28, 2003, and appellants' petition for review by the Supreme Court was denied June 11, 2003.