Filed 12/16/14  H B & C Associates v. McKenna, Long & Aldridge CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| H B & C ASSOCIATES, LLC,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>MᶜKENNA, LONG & ALDRIDGE LLP,<br><br>　　　Defendant and Appellant. | A139302<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-12-517439) |

H B & C Associates, LLC (HBC) sued Luce, Forward, Hamilton & Scripps LLP (Luce Forward) for legal malpractice in connection with disputes that developed among investors in a real estate development.  Luce Forward's successor in interest, McKenna, Long & Aldridge LLP (McKenna), brought a special motion to strike the complaint under Code of Civil Procedure section 425.16.[1, 2]  The trial court denied the motion on the grounds that legal malpractice claims are not subject to the anti-SLAPP statute.  We review the denial of the motion de novo, and affirm the trial court's ruling.

---

[1] All statutory references are to the Code of Civil Procedure.

[2]  Section 425.16 is commonly referred to as the "anti-SLAPP statute."  SLAPP is an acronym for "strategic lawsuit against public participation."  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 (*Jarrow*).)  Section 425.16 was enacted in order to discourage the practice of filing retaliatory, meritless lawsuits against opponents on a public issue in order to chill their exercise of free speech.  (See legislative findings in § 425.16, subd. (a).)

## I.  BACKGROUND

Airport Boulevard Realty LLC (ABR) was formed in 1995.  In 2004, ABR owned a parcel of property in Napa, California, consisting of land ABR had already developed and an adjacent undeveloped parcel.  ABR decided to begin the process of developing a new hotel on a portion of the undeveloped parcel, and sought investors to contribute cash and hotel development experience.  One of the prospective cash investors was John Challas.  Following negotiations with Challas and other investors, the participants in the hotel project agreed to an amended operating agreement for ABR under which the original members of ABR would continue to be members but four new investors, including Challas, would become new members of ABR.  At some point before the amended operating agreement became effective in June 2005, Challas indicated he would be executing the agreement on behalf of HBC, a limited liability company owned by members of his family.  Philip Jelsma, a Luce Forward partner was retained to draft the amended operating agreement.[3]  It is disputed in this litigation whether Luce Forward represented ABR in this transaction and in later giving legal advice pertaining to it, or instead represented all of the investors in what HBC alleges was a joint venture to build the hotel.  Challas asserts he believed Luce Forward represented the interests of all the members of the joint venture, including HBC.

Under the amended operating agreement, the cash investors including HBC were required to make capital contributions over time totaling $3 million.  HBC contributed $350,000 cash initially as did the other investors.  Beginning in 2007, disputes developed between HBC and ABR over (1) a further $400,000 capital contribution ABR was requesting from HBC for hotel construction; (2) HBC's demand to see ABR's books and records to determine whether to make a further investment; and (3) HBC's rights and obligations if it was in default under the amended operating agreement.

In November 2010, HBC through attorney Mark Ellis threatened to sue ABR unless ABR either bought out HBC's initial investment of $350,000 or allowed HBC to

---

[3] Luce Forward merged with appellant McKenna in March 2012.

2

cure any alleged default under the amended operating agreement contingent on HBC's review and approval of ABR's books and records. Ellis submitted the HBC v. ABR dispute to the Judicial Arbitration and Mediation Service (JAMS) on December 21, 2010.[4] McKenna represented ABR in that proceeding.

In January 2012, HBC filed a form complaint against Luce Forward for legal malpractice and breach of fiduciary duty. HBC alleged Luce Forward represented all the parties to the agreement yet " 'took sides' " and acted adversely to HBC, breaching its professional and fiduciary responsibilities to HBC, to HBC's injury. After HBC filed the present case, Ellis made demands in the JAMS proceeding that McKenna withdraw as counsel for ABR and threatened to make a motion to disqualify the McKenna firm in that proceeding if the firm did not voluntarily withdraw.

In May 2013, HBC filed a first amended complaint in this action (FAC) to which McKenna responded with a special motion to strike under section 425.16. The FAC asserted causes of action against McKenna for legal malpractice and breach of fiduciary duty, as well as two parallel malpractice and breach of fiduciary duty causes of action asserted "derivatively" by HBC on behalf of ABR. The FAC included allegations intended to show (1) the amended operating agreement was in fact a joint venture agreement; (2) HBC reasonably believed Luce Forward was the sole law firm "representing the joint venturers and providing transactional legal services and advice for the benefit of all the individual members, . . . including HBC"; and (3) HBC did not discover Luce Forward had been acting adversely to HBC's interests until the late summer of 2011.

In its legal malpractice cause of action, HBC alleged Luce Forward negligently drafted the amended operating agreement, led HBC to believe its interests were being

---

[4] The amended operating agreement provided in relevant part: "The parties agree that any and all disputes . . . relating to this Agreement shall be submitted to JAMS . . . for mediation, and if the matter is not resolved through mediation, then it shall be submitted to JAMS . . . for final and binding arbitration . . . ." HBC followed its December 2010 submission with a demand for arbitration of the dispute in March 2011.

protected by Luce Forward when it was actually advising certain joint venturers to treat HBC adversely and deny it access to ABR's books and records, secretly took sides against HBC in 2011, when discussions were occurring among HBC and other joint venture members, and led HBC to believe it was continuing to perform legal services and was acting on behalf of the joint venture and its individual members. HBC alleged that but for Luce Forward's acts and omissions in advising ABR, HBC would not have been compelled to incur substantial attorney fees in bringing the arbitration proceeding against ABR. HBC sought these fees as damages.

HBC's breach of fiduciary duty cause of action was premised on Luce Forward's alleged failure to disclose its representation of adverse interests and conflicts of interest, failure to advise HBC to seek separate counsel, and secretly taking sides against HBC "in 2011, and later openly when litigation arose between HBC and ABR." HBC sought disgorgement by Luce Forward of all legal fees paid to it, and unspecified other damages. HBC realleged the same basic wrongs by Luce Forward in its derivative claims purporting to be brought on behalf of ABR to recover ABR's attorney fees incurred in the arbitration, fees paid to Luce Forward, and other unspecified damages.

McKenna's special motion to strike asserted (1) the basis for HBC's lawsuit was a spurious claim of malpractice by a nonclient intended to punish and chill protected activity—the law firm's defense of ABR in the JAMS proceeding, and (2) HBC could not establish a probability of prevailing on the merits. McKenna filed declarations and documents intended to show Luce Forward never represented HBC, HBC was well aware of this and had its own legal counsel throughout the relevant time period, and HBC brought this lawsuit to gain advantage over ABR in the JAMS proceeding by forcing it to bring in new counsel and incur attorney fees in two proceedings.

The trial court ruled in relevant part as follows on McKenna's motion: "Defendant fails to show that this case is subject to [section] 425.16. 'Legal malpractice is not an activity protected under the anti-SLAPP statute.' *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1535. Whether Plaintiff had an actual or

4

implied-in-fact attorney client relationship with defendant is an issue to be determined in the [pending] malpractice action." This timely appeal followed.

## II. DISCUSSION

McKenna contends (1) the trial court erred in determining HBC's action did not arise at least in part from an activity protected under section 425.16, and (2) HBC failed to demonstrate it has a reasonable probability of prevailing on the merits of its malpractice claims. We reach only the first of those contentions.

### A. *Applicable Law*

Section 425.16 provides: "A cause of action against a person *arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue* shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1), italics added.) Section 425.16, subdivision (e) defines " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " to include, in relevant part, "any written or oral statement or writing made *in connection with an issue under consideration or review by a* legislative, executive, or *judicial body*, *or any other official proceeding authorized by law* . . . ." (Italics added.)

The moving defendant's burden in bringing a special motion to strike is to demonstrate the act or acts of which the plaintiff complains were taken in furtherance of the defendant's right of petition or free speech in connection with a public issue, as defined in the statute. (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 669.) Unless the defendant meets that threshold burden, there is no need to determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Ibid.*) If the court finds the defendant has made the requisite showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing in the litigation. (*Ibid.*)

5

On appeal, "we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of showing the action is a SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step." (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 266–267.)

"[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cotati*).) Thus, the first prong of analysis under the anti-SLAPP statute focuses on *the acts on which liability is based*, not on the "gestalt" or "gist" of the cause of action. (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1190–1191.)

In making this analysis, "we disregard the labeling of the claim [citation] and instead 'examine the principal thrust or gravamen of a plaintiff's cause of action . . .' . . . [Citation.] We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.] If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272 (*Hylton*).)

Accordingly, a client's action against his or her own attorney for malpractice or breach of fiduciary duty, even if the claim is based on the attorney's petitioning activity on behalf of the client, is not subject to the anti-SLAPP statute. (*Hylton, supra*, 177 Cal.App.4th at p. 1273, relying on *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 730–732; see *Hylton*, at p. 1275; *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702; *Kolar v. Donahue, McIntosh & Hammerton*, *supra*, 145 Cal.App.4th at pp. 1537–1540 (*Kolar*); *Jesperson v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 632; *Moore v. Shaw* (2004) 116 Cal.App.4th 182, 197.) This is true because a client in a malpractice suit is not suing because their attorney engaged in petitioning activity, but because the attorney did not competently represent the client's interests. (*Kolar,* at p. 1540.) In contrast,

6

when a nonclient third party sues an attorney for petitioning activity on behalf of another, this can have the potential chilling effect the anti-SLAPP statute was designed to reach. (*Kolar*, at p. 1540.)

**B.** *Analysis*

As alleged in the FAC, HBC was injured by Luce Forward's acts and omissions in (1) drafting the amended operating agreement, (2) advising certain parties to the agreement about HBC's rights and obligations under it, (3) misleading HBC about who the firm represented, (4) failing to advise HBC to seek separate counsel, (5) secretly taking sides during discussions among the parties to the agreement during 2011, and (6) openly taking a position adverse to HBC in the JAMS proceeding.

Putting aside the question of whether HBC's allegations involve matters before a judicial body or "other official proceeding authorized by law" for purposes of section 425.16, subdivision (e), the FAC appears to present a straightforward attorney malpractice lawsuit of a kind *Kolar* and many similar cases hold is not subject to the anti-SLAPP statute.

McKenna urges us to disregard HBC's allegations and legal theories in our prong-one analysis and find HBC's purported malpractice claims are without substance and advanced solely to gain an advantage in the JAMS proceeding: "HBC has offered no act or event from which its malpractice suit arose, other than a ten-year old transactional malpractice claim against ABR's counsel. Thus the 'principal thrust' or 'gravamen' of HBC's suit is McKenna's representation of ABR in [the JAMS proceeding], not a trumped up and time-barred malpractice claim for transactional work on ABR's 2004 LLC Agreement. [Citation.] [¶] . . . [¶] . . . A malpractice suit by a non-client has no foundation in law or fact, and therefore no reason for being . . . other than as a SLAPP."

Section 425.16, subdivision (b)(2) provides that in making its determination under prong one, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability . . . is based." For example, a court considering an anti-SLAPP motion might look to the affidavits and other evidence to determine whether a cause of action has been mislabeled. (See *Hylton*, *supra*, 177 Cal.App.4th at

7

p. 1272.) Nonetheless, the purpose of doing so as part of a prong-one analysis is not to make factual findings or draw inferences about the plaintiff's underlying motive or strategy in bringing the suit, but simply to help understand the substance *of the cause of action or theory of liability the plaintiff is asserting*, i.e., to identify the " 'injury-producing conduct . . . that provides the foundation for the claim.' " (*Ibid.*) The case law is unequivocal that only the substance of the plaintiff's claims is relevant under the anti-SLAPP statute; the plaintiff's subjective intent or tactical motives in bringing suit are irrelevant. (*Cotati, supra*, 29 Cal.4th at p. 78.)

Jarrow*, *supra*, 31 Cal.4th 728, cited by McKenna, does not hold to the contrary. *Jarrow* held malicious prosecution claims are not exempt from scrutiny under the anti-SLAPP statute. (*Jarrow*, at p. 732.) The plaintiff had claimed that since the defendant's filing of a prior action without probable cause was not a valid act in furtherance of the defendant's right of petition or free speech, malicious prosecution claims arising from such conduct should not be subject to the anti-SLAPP statute. (*Jarrow*, at pp. 739–740.) The court reasoned that simply alleging malicious prosecution should not *exempt* a lawsuit from anti-SLAPP scrutiny because the Legislature did not intend that in order to invoke the statute a defendant would first have to establish its original lawsuit was in fact constitutionally protected as a matter of law. (*Jarrow*, at p. 740.) This would make the secondary inquiry about the plaintiff's probability of success superfluous. (*Ibid.*) McKenna generalizes from this that "simply alleging" attorney malpractice should not exempt a claim from the anti-SLAPP statute either. We fail to see how *Jarrow* supports McKenna's position. If anything, the case reaffirms that the court must decide the defendant's anti-SLAPP motion without making assumptions or findings as to the truth or falsity of the plaintiff's allegations. It does not hold appellate courts may disregard the substance and allegations of the plaintiff's complaint and base their prong-one analysis on circumstantial evidence of the plaintiff's ulterior motives in bringing suit.

McKenna's position that we may determine as a fact for purposes of prong one that Luce Forward never had an attorney-client relationship with HBC is also completely at odds with the design of the statute. Even under prong two, the plaintiff is not required

8

to prove the factual truth of its allegations or legal theory in order to defeat the motion. It is merely required to prove the lawsuit has " 'minimal merit' "—that it is supported by a sufficient prima facie showing if all of the evidence favorable to the plaintiff is credited. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) McKenna is effectively asking us to subject the plaintiff to a greater burden of proof under prong one than the courts have demanded under prong two. In our view, the trial court correctly ruled the gravamen of HBC's complaint is legal malpractice which is not subject to the anti-SLAPP statute, and the question of whether HBC actually had an attorney-client relationship with Luce Forward is not to be determined at this stage of the litigation.

In any event, even assuming for the sake of analysis Luce Forward never had an attorney-client relationship with HBC, we would still not find the suit arose from protected acts. Much of the complaint concerns Luce Forward's and ABR's dealings with HBC in the drafting, negotiation, and performance of a private land development deal outside of any legal proceeding of any nature. Although some allegations concern Luce Forward's representation of ABR in the JAMS proceeding, we are not persuaded claims arising from statements or writings in connection with a private contractual dispute resolution proceeding come within section 425.16. The Court of Appeal in *Century 21 Chamberlain & Associates v. Haberman* (2009) 173 Cal.App.4th 1 (*Century 21*) squarely held the act of initiating private contractual arbitration is not protected by the anti-SLAPP statute: "The anti-SLAPP statute protects statements made in, or concerning issues under review by, a 'judicial proceeding, or any other official proceeding authorized by law.' (§ 425.16, subd. (e)(1), (2).) Private contractual arbitration is neither. It is a private alternative to a judicial proceeding. It is not an 'official proceeding' because it is a nongovernmental activity not reviewable by administrative mandate or required by statute." (*Century 21*, at p. 5.) We agree with the reasoning and result in *Century 21* and find it fully applicable here.

We therefore conclude private arbitration is not a judicial proceeding but an alternative to such a proceeding. (*Century 21, supra*, 173 Cal.App.4th at p. 8.) Neither is it an "official proceeding authorized by law" for purposes of section 425.16,

9

subdivision (e).  Cases construing that language have limited it to proceedings conducted by governmental agencies or, when only nongovernmental entities are involved, to either quasi-judicial proceedings required as part of a comprehensive licensing statute and reviewable by administrative mandate (hospital peer review proceedings) or arbitration required by law to address a particular type of dispute (mandatory attorney fee arbitration).  (*Century 21*, at p. 9, discussing *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 and *Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347.)  The fact some aspects of private arbitration are subject to federal or state arbitration statutes does not convert every private arbitration into an "official proceeding authorized by law" for purposes of section 425.16, subdivision (e).

For these reasons, we find HBC's claims are not subject to the anti-SLAPP statute in whole or in part. The trial court properly denied McKenna's special motion to strike.[5]

## III.  DISPOSITION

The order denying McKenna's special motion to strike the first amended complaint is affirmed.


_____
Margulies, J.


We concur:


_____
Humes, P.J.


_____
Dondero, J.

---

[5] McKenna's pending motion for judicial notice is denied.

10